COURT OF APPEALS OF VIRGINIA

Present:  Judges Fitzpatrick, Overton and Senior Judge Duff


CARLOS A. REAL

MEMORANDUM OPINION[*] BY
v.    Record No. 2859-96-4          CHARLES H. DUFF
                                    JULY 29, 1997
TOWER ELECTRIC COMPANY,
 LMI INSURANCE COMPANY,
 CANOVA ELECTRICAL CONTRACTING, INC.
 AND ROYAL INSURANCE COMPANY OF AMERICA


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          (Herman M. Sawyer, Jr., on brief), for
          appellant.  Appellant submitting on brief.

          (Cathie W. Howard; Pierce & Howard, P.C., on
          brief), for appellee LMI Insurance Company.
          Appellee submitting on brief.

          (Benjamin J. Trichilo; Trichilo, Bancroft,
          McGavin, Horvath & Judkins, P.C., on brief),
          for appellees Canova Electrical Contracting,
          Inc. and Royal Insurance Company of America.
           Appellees submitting on brief.

          No brief for appellee Tower Electric Company.


     Carlos A. Real appeals a decision of the Workers'

Compensation Commission (commission) awarding him temporary total

disability benefits from June 21, 1994 through July 26, 1994.

Real contends that the commission erred in finding that he failed

to prove he was totally disabled after July 26, 1994 as a result

of his compensable June 21, 1994 injury by accident.  Finding no

error, we affirm the commission's decision.

     On appeal, we view the evidence in the light most favorable

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

to the prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

So viewed, the evidence proved that on June 21, 1994, while working for Tower Electric Company (Tower) as an electrician, Real lost his balance and fell from a ladder, landing on the corner of a table.  An ambulance transported him to the Alexandria Hospital, where he came under the care of Dr. Miguel H. Gonzalez, a thoracic and cardiovascular surgeon.

On June 21, 1994, Dr. Gonzalez performed a closed left thoracostomy to reinflate Real's left lung.  On June 24, 1994, Dr. Gonzalez discharged Real from the hospital with final diagnoses of traumatic left pneumothorax (i.e., a lung puncture), posterior rib fractures, and mild hemothorax.  On July 26, 1994, Dr. Gonzalez noted "good healing of the 9th and 10th left ribs." On that date, Dr. Gonzalez opined that "[f]rom the chest injury point of view, [Real] should be able to return to a full workload at this point."  Because Real complained of dizziness, weakness in both arms, and left arm pain, Dr. Gonzalez referred him to a neurologist for evaluation.  However, between July 27, 1994 and October 5, 1994, Real did not seek any medical treatment.

On October 6, 1994, Dr. Leo Van Herpe, an orthopedic surgeon, examined Real.  Dr. Van Herpe noted Real's persistent complaints of pain, but he also noted that Real made a minimal effort during the respiratory examination.  Dr. Van Herpe recommended a respiratory evaluation, the results of which showed

normal pulmonary functioning.  On October 19, 1994, Dr. Van Herpe wrote to Vik Brothers Insurance Group and recommended, pending the insurance company's approval, that Real undergo vocational rehabilitation in order "to get him active and back to work."[1] Real did not seek medical treatment between October 12, 1994 and February 12, 1995.

On November 29, 1994, responding to Real's counsel's question regarding Real's specific dates of disability, Dr. Van Herpe stated that "[t]he beginning date would indeed be the date of his accident.  The ending date would be his discharge from vocational rehabilitation or a date selected by me after reviewing his progress or lack of same in his rehabilitation program."

On February 13, 1995, Real returned to Dr. Van Herpe.  Dr. Van Herpe noted that Real had not been to a work hardening program, nor had he resumed working.  Dr. Van Herpe reported that Real's "physical examination shows a pain response out of proportion to the physical findings and no evidence of any significant persistent organic problem."  Dr. Van Herpe recommended that Real "should be put through a work-hardening program and returned to the work force."  Dr. Van Herpe recommended against any further medical treatment.

In his July 25, 1995 deposition, Dr. Van Herpe stated that,

---

[1]In his deposition, Dr. Van Herpe testified that he used the term "vocational rehabilitation," but that he meant "work hardening."

when he saw Real on October 6, 1994, from an orthopedic standpoint, he placed no restriction on Real's ability to return to his pre-injury work as an electrician. He noted that Real made no complaints of weakness or dizziness on October 6, 1994. Dr. Van Herpe testified that Real's October 6, 1994 complaints were not supported by objective testing, which showed Real's lung functioning was within normal limits. He testified that he indicated to Real that Real could perform his pre-injury job, and that the only reason he recommended that Real undergo a work hardening program was due to Real's reluctance to get back into the work force. Dr. Van Herpe opined that Real "was capable of doing his normal job with no restrictions from the time I first met him." Dr. Van Herpe recommended work hardening solely to show Real that he was capable of performing his job, due to Real's fears of going back to work, not because of any orthopedic restrictions. Dr. Van Herpe noted that at all times, Real seemed resistant to returning to any type of work. He testified that if Real had not been recalcitrant about going back to work, Real could have done so without work hardening. As of the date of the deposition, Dr. Van Herpe no longer recommended work hardening, and he opined that Real should be back at work. Dr. Van Herpe denied ever telling Real that he could not go back to work until after he went through a work hardening program. Rather, he told Real that he could perform his pre-injury job.

Real testified that he did not start work hardening because

-4-

he was never contacted by Dr. Van Herpe with an authorization from the insurance company. Real has not returned to any type of gainful employment since the accident.

Based upon this record, the commission found that Real did not prove continuing total disability after July 26, 1994. The commission relied upon Dr. Van Herpe's deposition testimony. Unless we can say as a matter of law that Real's evidence proved he remained totally disabled after July 26, 1994 as a result of his compensable injury by accident, the commission's findings are binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

The commission's decision is supported by the medical records of Dr. Gonzalez and the medical records and testimony of Dr. Van Herpe. It is uncontradicted that, from the standpoint of Real's chest injuries sustained as a result of his compensable accident, Dr. Gonzalez released Real to return to his pre-injury work on July 26, 1994. With respect to Real's July 26, 1994 complaints of dizziness and weakness, he chose not to seek further medical treatment for these complaints, and no evidence causally linked these complaints to his compensable injuries. In addition, when Real first saw Dr. Van Herpe on October 6, 1994, he made no complaints of dizziness or weakness. On that date, Dr. Van Herpe found no objective evidence to support Real's complaints of being unable to breathe. In his deposition, Dr. Van Herpe testified unequivocally that Real was able to perform

-5-

his pre-injury work from the first time he examined Real, and that he told Real that he could perform his pre-injury job. The commission was entitled to conclude, based upon Dr. Van Herpe's testimony, that his suggestion that Real undergo work hardening was necessitated by Real's refusing to go back to work, and not by any actual disability related to Real's compensable injury by accident.

For these reasons, we cannot find as a matter of law that Real's evidence sustained his burden of proving total disability after July 26, 1994. Accordingly, we affirm the commission's decision.

Affirmed.
